IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES D. WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.    05-122E |
| | ) | |
| v. | ) | |
| | ) | |
| MOTION CONTROL INDUSTRIES, | ) | |
| DIVISION OF CARLISLE CORPORATION, | ) | |
| RETIREMENT PLAN FOR BARGAINING | ) | |
| UNIT EMPLOYEES OF MOTION CONTROL | ) | |
| INDUSTRIES, DIVISION OF CARLISLE | ) | Senior Judge |
| CORPORATION, | ) | Maurice B. Cohill, Jr. |
| | ) | |
| Defendants. | ) | |

**CONCISE STATEMENT OF MATERIAL FACTS
IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff files the following Concise Statement of Material Facts in Support of Plaintiff's

Motion for Summary Judgment, pursuant to W.D.PA.LR 56.1, as follows:

**BACKGROUND**

1)    Plaintiff, Charles D. Wilson, is an adult citizen of the United States of America

and is a resident of the Commonwealth of Pennsylvania.  Complaint ¶ 1; Answer ¶1.

2)    Defendant, Motion Control Industries, Division of Carlisle Corporation

(hereinafter "Motion Control"), is a Delaware corporation with its principal offices located in

Charlottesville, Virginia.  Motion Control operated a manufacturing facility located at 1 Gillis

Avenue, Ridgway, Elk County, Pennsylvania, 15853 (hereinafter the "Ridgway Facility") until it

halted operations there on January 11, 2002.  Complaint ¶ 2; Answer ¶2.

3)    Wilson was employed by Motion Control at the Ridgway Facility.  His last day of

actual work was January 11, 2002, when Motion Control closed the plant at the Ridgway

Facility.  Wilson's hire date was February 25, 1972.  Complaint ¶ 9; Answer ¶9.

4)      While employed by Motion Control, Wilson's collective bargaining representative was IUE/CWA Local 502, AFL-CIO (hereinafter "Local 502"), an employee organization.  Complaint ¶ 9; Answer ¶9.

5)      Local 502 and Motion Control negotiated a series of collective bargaining agreements covering the bargaining unit at the Ridgway Facility.  The most recent collective bargaining agreement was effective by its terms from July 20, 2000 through June 27, 2003 (hereinafter the "2000 Agreement").  Complaint ¶ 10; Answer ¶10.  A true and correct copy of the 2000 Agreement is attached to the Plaintiff's Appendix to Concise Statement of Material Facts (the "Appendix") as Exhibit "1".

6)      On January 11, 2002, Motion Control ceased production at its Ridgway Facility and permanently laid off all of the employees represented by Local 502, including plaintiffs. Plaintiffs and the other employees represented by Local 502 received WARN Act [29 USC 2101 et seq.] pay and benefits through March 16, 2002.  At the time, there were approximately 127 employees affected by the lay-off.  Complaint ¶ 12; Answer ¶12.

7)      By virtue of his employment with Motion Control, Wilson is a participant in the defendant, Retirement Plan for Bargaining Unit Employees of Motion Control Industries, Division of Carlisle Corporation (the "Plan"). Complaint ¶ 5; Answer ¶5.

8)      The Plan is maintained to provide benefits as described therein to all employees employed in the bargaining unit represented by Local 502, including Wilson.  Complaint ¶¶ 3, 10; Answers ¶¶3, 10.

9)      The Plan is maintained pursuant to written documents (collectively the "Plan Documents"), which are: a complete plan document, amended and restated as of January 1, 1997 (the "1997 Document") and the Part II Supplement as amended and restated as of July 20, 2000

(the "2000 Supplement").    Complaint ¶ 3; Answer ¶3.    True and correct copies of the 1997

Document and the 2000 Supplement are attached to the Appendix as Exhibits "2" and "3",

respectively.

10)    The Plan is a defined benefit pension plan that provides for four different types of

benefits: Normal Retirement, Early Retirement, Disability Retirement, and Deferred Vested

Retirement.  Appendix, Exhibit 2, §§4.1, 4.2, 4.3 and 4.4, pp. 16-18.

11)    A participant's eligibility for a Disability Retirement benefit is defined by the

Plan Documents as follows:

> If the employment of a Participant, but not an Inactive Participant,
> terminates because of a Disability after he attains Disability
> Retirement Age, he shall be eligible to receive a disability
> retirement benefit under the Plan, in accordance with and subject
> to the provisions of the Plan.

Appendix, Exhibit 2, §4.3(a), p. 17.

12)    Based on his hire date with Motion Control, Wilson had at least twenty five (25)

years of vesting service in the Plan as of January 11, 2002.  Complaint ¶¶ 9, 12; Answer ¶¶ 9, 12.

<b>PLAINTIFFS' DISABILITY AND APPLICATION TO THE PLAN</b>

13)    Wilson was notified on August 21, 2004 that he had been awarded Social Security

Disability Benefits by the Social Security Administration, which determined the onset date of his

disability to be May 3, 2003.  A true and correct copy of Wilson's SSA Notice of Award is

attached to the Appendix as Exhibit "4".

14)    Wilson sought disability retirement benefits from the Plan after he received notice

in August 2004 that he was eligible to receive Social Security Disability benefits.  Deposition of

Charles Wilson, transcript pages 14-23; Appendix, Exhibit "5".

15)     Wilson made approximately four to six telephone calls to the appropriate Motion Control office to request an application for a disability retirement benefit. Deposition of Charles Wilson, transcript pages 14-23; Appendix, Exhibit "5".

16)     Robert A. Eberle, Esquire, attorney for plaintiff, sent a letter dated March 23, 2004 to Richard W. Perhacs, Esquire, the attorney representing Motion Control, inquiring whether Motion Control intended to pay disability retirement benefits to two individuals similarly situated to Wilson.  Complaint, ¶ 21; Answer ¶ 21.  A true and correct copy of the March 23, 2004 letter is attached to the Appendix as Exhibit "6".

17)     In response to the letter of March 23, 2004, Attorney Perhacs sent a letter dated April 20, 2004 to Attorney Eberle.  In that letter, Attorney Perhacs set forth Motion Control's position that the respective disabilities of two individuals similarly situated to Wilson both began "well after employment ended," and that they were therefore not entitled to the disability benefits requested insofar as their employment did not terminate "because of a disability" under Section 4.3(a) of the Plan Document.  A true and correct copy of the April 20, 2004, letter is attached to the Appendix as Exhibit "7". Complaint ¶ 22; Answer ¶ 22.

18)     In response to the April 20, 2004 letter, Attorney Eberle sent another letter dated May 24, 2004 to Attorney Perhacs.  The letter requested a clarification of Motion Control's position, and was written on behalf of several additional former Motion Control employees, all similarly situated to Wilson, who had made claims for disability retirement pensions with Motion Control and had been told, in one form or another, that they were ineligible for said benefits. The letter also requested confirmation that further resort to administrative procedures with the Plan Administrator would be futile.  A true and correct copy of the May 24, 2004 letter is attached to the Appendix as Exhibit "8".  Complaint ¶ 23; Answer ¶ 23.

19)    Neither Motion Control nor the Plan ever responded to Attorney Eberle's letter of May 24, 2004 (Exhibit "8").  Complaints ¶ 24; Answers ¶ 24.

<u>**PLAINTIFFS' CONTINUING EMPLOYMENT RIGHTS AFTER MARCH 16, 2002**</u>

20)    Wilson retained recall, seniority and other rights under the collective bargaining agreement between Motion Control and Local 502 which did not expire until June 27, 2003. Appendix Exhibit 1.

21)    Attorney Eberle represented Local 502 in a labor arbitration matter with Motion Control involving a dispute over the payout of accrued unused vacation benefits for the employees at Ridgway subsequent to the plant closing.  That arbitration case (designated Grievance No. 41) was heard on March 11, 2003 by Arbitrator Matthew M. Franckiewicz, who issued his Opinion and Award on June 24, 2003, which is attached to the Appendix as Exhibit "9".

22)    Vacation benefits under the Motion Control/Local 502 Agreement were accrued and paid out based on the employee's anniversary year.  Appendix, Exhibit 1.

23)    In the arbitration of Grievance No. 41, a schedule of vacation benefits owed to bargaining unit employees (including Wilson), was introduced into evidence.  A true and correct copy of which is attached to the Appendix as Exhibit "10".  That schedule indicates the amount of accrued vacation benefits that would be owing to each of the laid-off Ridgway employees, including Wilson.  Appendix, Exhibit "10".

24)    Arbitrator Franckiewicz sustained Grievance no. 41 and ordered Motion Control to pay accrued vacation benefits to each of the laid-off employees, including Wilson, based on the number of accrued vacation hours as of March 16, 2002.  Those payments were made by Motion Control and received by Wilson in the latter half of 2003.  Wilson had 240 accrued

vacation hours as of that date approximately.  Appendix, Exhibits "9" and "10"; Deposition of

Charles Wilson, transcript page 26.

Respectfully submitted,

JUBELIRER, PASS & INTRIERI, P.C.

BY:_____/s/ Jason Mettley_____
        Robert A. Eberle, Pa. I.D. #47359
        Jason Mettley, Pa. I.D. #81966
        219 Fort Pitt Boulevard
        Pittsburgh, PA 15222
        (412) 281-3850
        (412) 281-1985 (fax)
        rae@jpilaw.com
        jm@jpilaw.com
        Attorneys for Plaintiffs