# CONTENTS

| Section | Paragraph | Page |
|---|---|---|
| PREAMBLE | 1-5 | 1 |
| ARTICLE I: Union Recognition, Security & Check-off | 6-18 | 2-5 |
| ARTICLE II: Bulletin Boards | 19 | 5 |
| ARTICLE III: Wages and Incentive Pay | 20-30 | 5-7 |
| ARTICLE IV: Hours and Working Conditions | 31-62 | 7-11 |
| ARTICLE V: Overtime | 63-94 | 12-17 |
| ARTICLE VI: Seniority and Job Bidding | 95-136 | 17-24 |
| ARTICLE VII: Legal Holidays | 137-145 | 24-25 |
| ARTICLE VIII: Military Service | 146 | 25 |
| ARTICLE IX: Leave of Absence | 147-148 | 26 |
| ARTICLE X: Management | 149 | 26 |
| ARTICLE XI: Vacations | 150-163 | 26-28 |
| ARTICLE XII: Grievance Procedure | 164-172 | 28-30 |
| ARTICLE XIII: Arbitration | 173-181 | 30-31 |
| ARTICLE XIV: Insurance | 182-195 | 32-34 |
| ARTICLE XV: Pensions | 196-211 | 34-36 |
| ARTICLE XVI: Funeral Leave | 212-217 | 36 |
| ARTICLE XVII: Jury Duty | 218 | 36 |
| ARTICLE XVIII: Strikes and Lockouts | 219 | 37 |
| ARTICLE XIX: Change in Law | 220 | 37 |
| ARTICLE XX: Scope of Agreement | 221-224 | 37-38 |
| ARTICLE XXI: Expiration and Renewal | 225-226 | 38 |
| APPENDIX A: Severance Plan | | 39-40 |
| APPENDIX B: Medical Insurance Summary | | 41 |
| APPENDIX C: Classifications and Rates | | 46 |
| APPENDIX D: New Topics Resolved | | 49 |

Exhibit 1

# PREAMBLE

(1)    Agreement, made this 20th day of July, 2000 between Motion Control Industries, Division of Carlisle Corporation, hereinafter referred to as "Company" and Local 502 affiliated with International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers, AFL-CIO hereinafter referred to as "Union," as agent for and on behalf of the Company's hourly production and maintenance employees, hereinafter referred to as "Employees."

(2)    The purpose of this Agreement is to provide orderly collective bargaining relations, to establish and maintain friendly and harmonious relations between the Company and the Union, to secure prompt and equitable settlement of grievances and to establish and maintain fair wages, hours, and working conditions for employees covered by this Agreement.  The Company and the Union agree to cooperate fully in efforts to reduce scrap, maintain present and new equipment, increase plant operating efficiency, and maintain a safe working environment.

(3)    The Company and the Union have established a Severance Plan that became effective January, 1986.  The terms, conditions, and funding of the Plan appear in a separate agreement which shall not be affected by the duration of this or any succeeding labor Agreement.

(4)    In the event the Company's facility located in Ridgway, Pennsylvania, is shut down as a result of relocation of its friction materials operations, the Company agrees to negotiate in good faith with the Union all the benefits under the terms of this Agreement.

(5)    It is the intent of the parties where expressions "he, his," etc. appear in this Agreement, they shall include both sexes.

1

Exhibit 1

# ARTICLE 1
## UNION RECOGNITION, SECURITY, AND CHECK-OFF

(6)    Section 1: The Company recognizes the Union as the sole and exclusive collective bargaining agent for all its production and maintenance hourly employees on the Company's payroll at its plant in Ridgway, Pennsylvania, except Supervisory Employees, Foremen, Assistant Foremen, Timekeepers, Guards or Watchmen with respect to rates of pay, hours of employment and other conditions of employment.  Employees not covered by this Agreement shall not perform production or maintenance work, except for experimental purposes, on new machinery or indirect training of employees.

(7)    (a)    The Company agrees that no outside contracting of work, of the type normally performed by the maintenance employees and for which proper and adequate skills, equipment, and facilities necessary for the performance of such work exists in house, will be done without prior agreement with the Union.   Where manpower availability is not adequate to perform the work within the time required without adversely affecting normal maintenance operations, such conditions will be discussed with the Union prior to a decision being made.

(8)    Section 2: All current members of the Union must remain members in good standing as a condition of employment for the life of this Agreement.    All employees who are not now members of this Union and all new employees shall be given an election to either become members of the Union or to pay, as a condition of employment, to the Union, the employees' exclusive bargaining agent, an amount of money equal to that paid by other members in the bargaining unit who are members of the Union, which shall be limited to an amount of money equal to the Union's regular and usual dues.   For employees now inactive, such payments shall start thirty (30) calendar days following their becoming active.  For new employees, such payment will start six (6) weeks, two hundred forty hours, after their date of hire.  This time period for new

2

Exhibit 1