IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES D. WILSON, ) | |
| ) | |
| Plaintiff, ) | Civil Action Nos.   05-122E |
| ) | |
| v. ) | |
| ) | |
| MOTION CONTROL INDUSTRIES, ) | |
| DIVISION OF CARLISLE CORPORATION, ) | |
| RETIREMENT PLAN FOR BARGAINING ) | |
| UNIT EMPLOYEES OF MOTION CONTROL ) | |
| INDUSTRIES, DIVISION OF CARLISLE ) | Senior Judge |
| CORPORATION, ) | Maurice B. Cohill, Jr. |
| ) | |
| Defendants. ) | |

**BRIEF IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

Plaintiff, Charles D. Willson, respectfully submits this Brief in support of his Motion for Summary Judgment. The above-captioned action is a lawsuit filed by Wilson against his former employer, Motion Control Industries, Division of Carlisle Corporation (hereinafter "Motion Control") and against the Retirement Plan for Bargaining Unit Employees of Motion Control Industries, Division of Carlisle Corporation (the "Plan"), in which Wilson is a participant.

The Court's Initial Case Management Order, filed May 18, 2006 (Document No. 10) provides that discovery in this case was to be separated into two phases. Phase I discovery was directed towards "two threshold legal issues". The first threshold issue was whether the Plan "has a legal obligation to consider a participant for a disability pension when the participant's employment with the Defendant Employer was terminated at or before the date of disability due to a permanent plant closing". Id. at Paragraph 4. The second threshold issue regarded "whether

Plaintiff has properly exhausted his administrative remedies, and if not, whether he is excused from the exhaustion requirement".

Phase I discovery has concluded and Wilson hereby seeks summary judgment on both of the Phase I issues. Accordingly, Wilson submits the instant brief in support of his motion for summary judgment.

II.   **ARGUMENT**

    A.   **Standard of Review on a Motion for Summary Judgment**

A party is entitled to summary judgment when the record demonstrates no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Romero v. SmithKline Beecham*, 309 F3d 113, 117 (3rd Cir. 2002); *citing:* Fed.R.Civ.P. 56. Where "the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial'". *Rendulic v. Kaiser Aluminum & Chemical Corporation*, 166 F.Supp.2d 326, 332; *quoting:* Matsushita Electrical Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L.Ed.2d 538, 106 S. Ct. 1348 (1986).

    B.   **Wilson's Motion for Summary Judgment must be granted because the undisputed material facts demonstrate that, as a matter of law, Wilson is eligible for disability retirement benefits because his disability arose prior to the expiration of the collective bargaining agreement between Local 502 and Motion Control.**

This is a lawsuit filed against the Plan and Motion Control by Wilson to recover disability retirement benefits. The Plan is indisputably an "employee pension benefit plan" as that term is defined by Section 2(A) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1002(2)(A), and is therefore governed by the provisions of ERISA. Wilson's claims are brought pursuant to Section 502(a)(1)(B) of ERISA, which

authorize a plan participant to file a lawsuit in federal court to recover benefits due him under the plan.

A participant's eligibility for a disability retirement benefit is defined by the Plan Documents as follows:

> If the employment of a Participant, but not an Inactive Participant, terminates because of a Disability after he attains Disability Retirement Age, he shall be eligible to receive a disability retirement benefit under the Plan, in accordance with and subject to the provisions of the Plan.

Appendix, Exhibit 2, §4.3(a), p. 17.

Therefore, in order to be eligible for a disability retirement benefit, one must demonstrate that: 1) he is a Participant; 2) his employment terminated "because of a Disability"; and, 3) disability occurred after he attained "Disability Retirement Age".

There is no dispute Wilson, by virtue of his employment with Motion Control in a job classification represented by IUE/CWA Local 502, AFL-CIO ("Local 502"), is a Plan Participant.

Likewise, there can be no dispute Wilson had attained "Disability Retirement Age" under the Plan. As modified by the 2000 Supplement, the term "Disability Retirement Age" is defined to mean "Incurs a Disability after completing ten or more years of Vesting Service" in the Plan. Appendix, Exhibit 3, Section (j)(3). Wilson, who was hired by Motion Control on February 25, 1972, had nearly 30 years of vesting service with the Plan as of January 11, 2002 and the onset date of his disability was May 3, 2003. Therefore, Wilson had attained "Disability Retirement Age" as defined by the Plan.

Therefore, the issue boils down to whether Wilson's employment with Motion Control terminated "because of a disability". If so, he is clearly eligible for a disability retirement

3

benefit. If not, he is ineligible for the benefit. Before deciding this issue, the Court must determine the appropriate standard of review to apply.

        1.        <u>The District Court should review Plaintiffs' claims for pension benefits de novo</u>.

When a participant exhausts a plan's internal claims procedure, is still aggrieved, and files a Section 502(a)(1)(B) action to recover benefits, the first thing a district court must decide is the standard of review. In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court delineated two possible standards of review for a court to use when reviewing a plan administrator's determination regarding a participant's entitlement to employee benefits under the plan -- such claims must be reviewed under either a *de novo* standard of review or the arbitrary and capricious standard of review. *Id.,* 489 U.S. at 115. Under *Firestone,* "*de novo* review of a denial of benefits is appropriate only when a plan administrator has 'no discretionary authority to determine eligibility for benefits.'" *Romero v. SmithKline Beecham,* 309 F.3d 113, 118 (3d Cir. 2002); *quoting Firestone, supra.* If, however, the plan grants the plan administrator the authority to interpret the plan's terms and decide claims for benefits, a reviewing court may only rule against the plan if the administrator's determination was arbitrary and capricious. *Cefalo v. SmithKline Beecham,* 2000 U.S. Dist. LEXIS 22140*4 - *5 (W.D. Pa. 2000).

The Plan in this case grants discretionary authority to a pension Committee to administer the provisions of the Plan and to determine eligibility for benefits. Appendix, Exhibit 2, Plan, §7.1-§7.3. Therefore, under normal circumstances, this Court would review the Committee's decision denying Wilson's claim for benefits to determine whether it was arbitrary and capricious. If it was, Wilson would be awarded benefits, and if not, his lawsuit would be dismissed.

There was no administrative review of Wilson's claim; in fact, Wilson never filed a claim. Accordingly, the pension Committee authorized by the Plan to make final determinations of eligibility never reviewed his claim. The Plan argues that this was because Wilson failed to exhaust his administrative remedies but, as will be discussed below (as it pertains to the second Phase I issue), Wilson attempted to file a claim but Motion Control and the Plan ignored his requests. Accordingly, Wilson should be excused from the requirement to exhaust his administrative remedies because doing so would be futile, and this Court should review Wilson's claims *de novo*. *Riggs v. A.J. Ballard Tire & Oil Company, Incorporated Pension Plan and Trust*, 1992 U.S. App. LEXIS 31134, 16 Employee Benefits Cas. (BNA) 1070 (4th Cir. 1992) ("When administrative exhaustion is excused, the trial court must determine the claimant's entitlement to benefits in the first instance.") *Id.*, 1992 U.S. App. LEXIS 31134, *6).

      2.    <u>Wilson maintained residual employment rights through June 27, 2003 under Local 502's collective bargaining agreement with Motion Control and since he was determined disabled prior to that date, on May 3, 2003, his employment with Motion Control terminated because of a disability</u>.

The Plan Documents provide that an employee is eligible for disability retirement benefits if, among other things, "the employment of a Participant", Wilson, "terminates because of Disability". Appendix, Exhibit 2, §4.3(a), p. 17. Motion Control argues that the Wilson's employment terminated either on January 11, 2002, the date production at the Ridgway facility ceased, or on March 16, 2002, after WARN Act payments and benefits expired and the plant at the Ridgway facility closed. Motion Control argues that since Wilson's disability did not occur until after that date, he cannot be eligible for a disability retirement benefit because his employment did not terminate due to a disability but because the plant closed.

Significantly, the Plan Documents do not define "employment" nor do they specify when "employment" terminates. It has been observed at common law:

> A contract of employment which by its express terms is for a definite time or until a definite day presents, of course, no problem concerning its duration and termination. The employer has the implied right to discharge the employee for cause, but otherwise the employment cannot be terminated of right during the term of its existence as expressed in the contract.

53 Am.Jur. 2d § 27.

Straightforwardly, at common law, the duration of an employment contract shall be for the time expressed in the agreement. In this case, Wilson had a contract of employment. Wilson's contract of employment was the collective bargaining agreement that Local 502 negotiated on his behalf with Motion Control. Appendix, Exhibit 1. The collective bargaining agreement very clearly contained a term expressing its duration: "This Agreement shall remain in effect from the date of execution hereof until midnight, June 27, 2003". Appendix, Exhibit 1, Article 21.

Very clearly, Wilson retained employment rights under the collective bargaining agreement even after March 16, 2002. For one, he maintained seniority rights, which under the collective bargaining agreement could only be terminated for several enumerated reasons, none of which including a plant closing. Appendix, Exhibit 1, Article 6, Section 7. These seniority rights governed Wilson's right to be recalled to active service for Motion Control in the event Motion Control had re-opened the Ridgway facility during the term of the collective bargaining agreement. Appendix, Exhibit 1, Article 6, Section 11(d)(1), (2).

Admittedly, these rights had little to no value to Wilson as the prospect of Motion Control re-opening the Ridgway facility was remote and never did come to pass. But nevertheless, Wilson still held legal rights to employment by virtue of their collective bargaining

6

agreement, which did not expire until June 2003. To simply assert, as Motion Control does, that Wilson's employment "terminated" when the plant officially closed on March 16, 2002, is inaccurate and unsubstantiated by any rule of law. Wilson was permanently laid off with recall rights – even though recall was remote - but his employment and seniority were legal rights he possessed until his contract of employment, the collective bargaining agreement, expired in June of 2003.

Furthermore, Wilson received vacation benefits even after the plant closed on March 16, 2002. An arbitrator employed by Motion Control and Local 502 ruled that Motion Control was obligated, after the plant closing, to pay all employees vacation benefits that they had accrued up until March 16, 2002. Appendix, Exhibit 9. The Arbitrator further ruled that since Motion Control was not obligated to make these vacation benefits until after July 1, 2002, the vacation benefits payments had to be computed based on the wage rate that became effective on July 1, 2002 – months after the official plant closing. This supports Wilson's contention that he still possessed contractual employment rights pursuant to the collective bargaining agreement, even after the Ridgway facility closed on March 16, 2002.

Accordingly, and contrary to Motion Control's position, Wilson's employment did not terminate on March 16, 2002. Wilson's employment terminated on either the date a disability made him unable to work for Motion Control or on the date that the collective bargaining agreement expired, whichever came first. Since Wilson's disability arose prior to the expiration of the collective bargaining agreement, his employment terminated "because of disability", and he is eligible for a disability retirement benefit.

**C.   Wilson should be excused from the exhaustion requirement because further resort to the administrative process prior to the filing of these actions would have been futile.**

Section 503 of ERISA requires all employee benefit plans, including the Plan, to:

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review

29 U.S.C. § 1133.

When a participant seeks to initiate a claim for benefits, Section 503 requires the Plan to consider that claim, and if the claim is denied, to notify him in writing of the specific reasons for denial, and afford a "full and fair" administrative review. Once that review has been exhausted, the participant, if still aggrieved, is free to initiate a claim in federal court under Section 502(a)(1)(B) of ERISA. 29 U.S.C. §§1132(a)(1)(B).[1] However, a participant may not bring an action in federal court under Section 502(a)(1)(B) without first exhausting the plan's internal claims procedure. *Berger v. Edgewater*, 911 F.2d 911, 916 (3d. 1990).

The Plan contains specific provisions intended to comply with the provisions of ERISA Section 503 and the applicable regulations. Appendix, Exhibit 2, 1997 Document, § 7.9(b). These provisions outline a two-step process whereby a participant first makes an application for benefits. After being notified, within a certain timeframe, that his application has been denied,

---

[1] The Department of Labor has promulgated extensive regulations regarding a plan's obligations under Section 503 of ERISA. *See:* 29 U.S.C. § 2560.503-1. These regulations establish timelines by which a plan must respond and process claims for a variety of employee benefits, what types of notices they must provide participants, what those notices must contain, and what rights participants must be afforded throughout the process. Since there was no administrative review in this case, there is no utility to reviewing these obligations at length.

8

the participant may then initiate an appeal to a Committee,[2] which is to review the claim and render a final, written determination.

It has been observed, however, that "[a]lthough the exhaustion requirement is strictly enforced, courts have recognized an exception when resort to the administrative process would be futile." *Berger*, 911 F.2d at 916. In *Berger,* the Third Circuit upheld the trial court's determination that three of the plaintiffs did not have to resort to the plan's administrative remedies prior to suing to recover a "70/80 retirement" benefit because doing so would be futile:

> The Plan's administrative procedures required the Pension Board to notify a claimant in writing of the specific reasons for the denial of a claim. Although the three employees failed to make written requests for benefits, this does not excuse [the defendant company]'s failure to comply with the Plan's administrative procedures. It is clear that [plaintiffs] Berger, Dallas and Wagner made their desire for a 70/80 retirement plain to the responsible company officials. In addition, it is clear that the company had adopted a policy of denying all applications for 70/80 retirement. [Citation to the record omitted]. We agree with the district court that [the defendant company]'s blanket denial of 70/80 retirement… and [the defendant company]'s failure to comply with the Plan's administrative procedures weigh in favor of applying the futility exception to [plaintiffs] Berger, Dallas and Wagner. Given these circumstances, any resort by these employees to the administrative process would have been futile. Thus, the district court was correct in excepting these three employees from the exhaustion requirement.

*Berger*, 911 F.2d at 917.[3]

In *Berger*, the Court held that the plaintiffs did not have to exhaust their administrative remedies because doing so was futile where the "responsible company officials" had been made aware of the plaintiffs desire to receive a retirement benefit, had failed to process those claims in

---

[2] The Committee is defined as the "Carlisle Corporation Pension and Insurance Committee" by Section 2.1(i) of the 1997 Document, with powers and duties outlined in Section 7.3. Exhibit 2, 1997 Document, §§ 2.1, 7.3.

[3] The Court further affirmed the trial court's decision to dismiss a fourth plaintiff's claim for benefits because that plaintiff "never even asked for the 70/80 retirement". *Id.*

accordance with the plan's administrative procedures, and where the company had adopted a blanket policy of denying such claims. The case before the Court fits within the fact pattern of *Berger* and the same outcome should follow.

Wilson testified at his deposition that it was his understanding that in order to prove to Motion Control and the Plan that he had a disability, that he first had to obtain an award of Social Security Disability Benefits from the Social Security Administration. Wilson obtained those benefits by award dated August 21, 2004, which deemed the onset date of his disability May 3, 2003. Shortly thereafter, Wilson testified that he obtained a telephone number from a union steward of Local 502 for Motion Control's human resources department in Charlottesville, Virginia. Wilson testified that he had been given the name of Norm Tarbell as a "human resource person" in Charlottesville that he needed to talk to.

Wilson testified that the phone number he received from the union steward was 800-840-5635 and he was given extension 7938. As of August 31, 2006, calling that number reaches a recording indicating that the caller has reached "Carlisle Motion Control Industries in Charlottesville, Virginia". By entering extension 7938, the caller gets a message indicating that he has reached the Human Resources Department, and offers the chance to leave a voice message.[4]

Wilson testified that he called this number between four to six times during August and September of 2004 in an effort to request whatever paperwork was required to make a claim for disability retirement benefits. Wilson specifically recalled that the last message he left was: "Sir, if you don't want to talk to me, at least send me the appropriate paperwork." But Wilson never received any paperwork from Motion Control or the Plan so that he could file a claim.

---

[4] Motion Control admits its principal offices are located in Charlottesville, Virginia. Answer ¶ 2.

Wilson testified that he spoke with his union again, and was told that attempting to contact Motion Control was a "waste of time", that Motion Control was not calling anyone back. In fact, Wilson was experiencing a similar response from Motion Control that other former Motion Control employees, Glen Olay, Henry Hearne, Paul Plyler, William Lundner, Lynn Rhodes, and Terry Rockwell received.[5]

On March 23, 2004, Robert A. Eberle, Esquire, Wilson's attorney and also the attorney for Olay, Hearne, Plyler, Lundner, Rhodes, and Rockwell, wrote to Richard A. Perhacs, Esquire, who represented Motion Control and who works for the same law firm representing Motion Control and the Plan in this litigation. Attorney Eberle wrote:

> Dear Rich:
>
> I am writing to you in connection with our earlier discussions regarding your client, Motion Control Industries. My firm has been retained to represent Messrs. Rockwell and Davido <u>regarding their claims for disability pensions with Motion Control</u>. Inasmuch as you and I have spoken on a number of occasions about this subject and the various other issues pertaining to Motion Control and IUE/CWA Local 502, <u>I want to communicate separately on behalf of these individual clients</u>.
>
> <u>As I have previously mentioned, I was contacted by these two gentlemen and other former employees of Motion about their possible claims for disability pensions</u>.
>
> \*   \*   \*
>
> Regarding Mr. Rockwell and Mr. Davido, please be advised as follows.
>
> Mr. Rockwell began his employment with Motion Control on April 21, 1969. His social security number is ▮▮▮▮▮▮▮▮, and his date of birth is ▮▮▮▮▮▮▮▮. His current address is 797 Highland Road, Kane, PA 16735. Mr. Rockwell's last day of work was January 11, 2002, and he received WARN Act pay through March

---

[5] These individuals have initiated identical lawsuits against Motion Control and the Plan, which are at Civil Action Nos. 04-266, 276-280. These lawsuits are presently pending before this Court, the parties having filed cross motions for summary judgment.

16, 2002. In May 2002 Mr. Rockwell became disabled as the result of heart disease. He subsequently qualified for Social Security disability benefits in July 2002. <u>Mr. Rockwell apparently made a verbal request for the paperwork to initiate a claim for disability pension benefits with Motion Control, but he was advised by Robin E. at Motion Control that he was not eligible for the disability pension because he was not working for Motion Control at the time he became disabled</u>.

Mr. Davido began his employment with Motion Control on November 11, 1978. His social security number is ▮▮▮▮▮▮▮▮▮, and his date of birth is ▮▮▮▮▮▮▮▮. His current address is 243 Ash Street, Ridgway, PA 15853. Mr. Davido's last day of work was January 11, 2002, and he received WARN Act pay through March 16, 2002. On May 9, 2002, Mr. Davido suffered a heart attack that left him disabled from working. He applied with Motion Control for a disability pension, and he actually began receiving benefits. <u>He was subsequently verbally informed by Norm Tarbell that he had mistakenly received the benefits, and those benefits were discontinued. I am not aware of any actual determination sent to Mr. Davido regarding the decision to discontinue. He informs me that he was told by Mr. Tarbell that he was not eligible for a disability pension because he was not actively employed with Motion Control at the time he became disabled</u>.

<u>I am aware that there are other individuals in similar circumstances with each of my clients</u>. <u>In other words</u>, there is at least one other person who began receiving benefits and then saw those benefits discontinued (similar to Mr. Davido), and <u>there are others who became disabled and then were verbally informed by the Company that they were not eligible for disability pension benefits (similar to Mr. Rockwell)</u>. However, to date I have not been retained by any of those individuals, although I expect that will change in the near future.

In view of the information set forth above, would you kindly review this matter with your client. I have two questions. First, will Motion Control reconsider the decision to deny disability pension benefits to either or both of these two individuals based on the information set forth above? Second, in the event the Company is unwilling to alter its position, will the Company require these two individuals to bring administrative claims before pursuing a remedy in federal court under ERISA? Both individuals have authorized me to proceed in the most appropriate venue. <u>If the Company wants these cases addressed in the first</u>

> instance through the administrative process, then I will submit claims for both clients. If the Company were willing to agree that pursuit of the administrative process at this stage (given the apparent number of individuals in the same situations as these two claimants) would be futile, then I would proceed directly with an ERISA lawsuit of their behalf.

Appendix, Exhibit 5.[6]

Attorney Perhacs responded to Attorney Eberle's letter on April 20, 2004 in relevant part by stating:

> Mr. Rockwell's situation is identical [to Mr. Davido's], i.e., the disability began well after employment ended. The plant was closed and all employees terminated on March 16, 2002. As your letter recites, both of these individuals became disabled in May, 2002, almost two months after their employment ended.
>
> I also enclose for your information a copy of the relevant portion of the pension plan. As you can see, Section 4.3(a) clearly provides that employment must terminate "because of disability." In this case the employment of your clients, along with the employment of everyone else at the plant, terminated well before the disabilities arose. In light of the language of the plan, which seems rather clear, the Company will not reconsider its position in this matter.
>
> I do not have authorization to waive any requirement that administrative claims be filed, so, if your clients are insistent on pursuing this despite the above information, you should proceed accordingly.

Appendix, Exhibit 6. (Emphasis added).

Here, Motion Control makes it plain that any employee who became disabled after March 16, 2002 cannot be eligible for a disability pension benefit because their employment did not terminate "because of a disability". Motion Control goes on to state that they "will not reconsider its position", yet refuses to agree to waive the requirement to exhaust administrative

---

[6] Don Davido died in the summer of 1994.

remedies and further fails to identify what administrative steps would be appropriate at this point in time.[7]

Neither did Motion Control answer Attorney Eberle's assertion that Motion Control refused to even send a pension benefit application to Rockwell, despite his efforts to request one. Olay and Hearne likewise had called Motion Control to request an application but were simply told that they were not eligible for a benefit, and no forms were sent. Plyler had actually applied for a disability pension benefit and received a written denial notice from Motion Control.

Attorney Eberle wrote another letter dated May 24, 2004 to Attorney Perhacs:

> Re:   Donald A. Davido, Jr., Terry K. Rockwell, James E. Clark,
>        Henry M. Hearne, William F. Lunder, Paul L. Plyler,
>        Lynn A. Rhodes and Glenn H. Olay
>        Disability Pension Claims With Motion Control Industries
>
> Dear Rich:
>
> I received your letter dated April 20, 2004, in response to my letter of March 23, 2004, regarding Don Davido and Terry Rockwell. <u>I have been contacted by the other individuals listed above because they also have claims for disability pensions with Motion Control. Although their individual circumstances vary somewhat, the common thread is that each individual has been informed by the Pension Plan Administrator's office that they do not qualify for a disability pension benefit because they were not actively working for Motion Control at the time the disability claim arose</u>. This is the same basis asserted in the cases of Davido and Rockwell.
>
> After I received your letter of April 20, 2004, I instructed Davido and Rockwell to once again request an application for benefits. <u>Rockwell informed me that he contacted the Plan Administrator's office on Monday, May 17, 2004, and they refused once again to provide him with an application for benefits. I am bringing this to your attention because there does not seem to be any reason to believe that further efforts to exhaust the administrative process are warranted. If there is something further that can be done, I am asking you to advise what that next step would be. Please note that</u>

---

[7] This constitutes a violation of the Labor regulations regarding the administrative review of claims, which provide that an adverse benefit determination must be accompanied by a "description of the plan's review procedures". 29 C.F.R. § 2560.503-1(g)(1)(iv).

14

>       <u>whatever would be the next step, the other individuals listed above will also pursue that step</u>.  If you require information regarding the circumstances surrounding the claims of the other individuals, please let me know and I will forward that information to you immediately.
>
>       Your attention to this matter will be greatly appreciated.

Appendix, Exhibit 7.  (Emphasis added).

Motion Control did not respond to Attorney Eberle's letter.

Although Wilson was not represented by the undersigned at the time these letters were sent and his claim for disability retirement benefits was not within the scope of these letters, this documentation corroborates Wilson's deposition testimony that Motion Control failed to respond to his requests for a disability retirement benefit application form.  It also demonstrates that Motion Control had adopted a blanket denial of any claim for disability retirement benefits asserted by a Motion Control employee if that claim was asserted after March 16, 2002.  Wilson was and is in precisely the same boat as Olay, Hearne, Plyler, Lundner, Rhodes, and Rockwell – ignored, annoyed, and just looking for a fair shake.

Motion Control will cling to the exhaustion argument in this case as it has done in the others.  Strategically, Motion Control does so because they know if the court rules that Wilson failed to exhaust his administrative remedies, then he will have to return to the administrative process.  At the end of that process, Motion Control will have benefited by having the opportunity to build a defense to his claim that a district court would have to review under the deferential arbitrary and capricious standard.

Meanwhile, this strategy is manifestly unjust and insulting to Wilson, as it is to the others.  Here is a man, like the others, who gave almost 30 years of his working career to Motion Control, which career ended when Motion Control closed the plant.  After receiving Social

Security disability benefits, and believing he is entitled to disability retirement benefits from the Plan, he makes repeated attempts to simply obtain an application from human resources at Motion Control's Charlottesville, Virginia facility, and is ignored.

If that was not proper channel for obtaining a form, why didn't Motion Control extend Wilson the simple courtesy of a return call with the proper information? Motion Control blames Wilson for failing to unlock the magic key to filing a claim, but they avoided and ignored him at every turn and passed on every opportunity to inform him of what they needed. Wilson did not run to the courthouse; he was being ignored and had nowhere else to go.

Furthermore, Motion Control has already denied in the pleadings that Wilson is eligible for a disability retirement benefit. Answer, ¶¶ 17, 20, 24. Administrative review is clearly unnecessary because Motion Control and the Plan have plainly determined that Wilson – as with the others – is not eligible for benefits because the plant closed before the date of disability. Administrative review truly is futile.

Wilson's situation is the same as the one which caused the Court in *Berger* to conclude that it was futile for the plaintiffs to exhaust their administrative remedies, then there is no set of facts that will do so. Wilson made his desire for a disability pension known to Motion Control. He called their corporate Human Resources and asked for a pension applications. Additionally, we know from the correspondence exchanged between Motion Control's attorneys and the undersigned in the other disability cases that Motion Control had adopted a blanket denial of all disability pension benefits if the disability arose after March 16, 2002. What utility, at this point, is there for forcing Wilson to exhaust administrative remedies? Motion Control's Answer, ¶¶ 17, 20, 24.

16

Other than satisfying Motion Control's strategic interest of getting the benefit of the deferential arbitrary and capricious standard of review, which advantage their conduct in this case does not warrant, there is no utility to forcing Wilson to return to the administrative process. The outcome will be the same: Motion Control and the Plan will deny his claim because his disability arose after the date the plant closed.

### III.   CONCLUSION

For all the reasons stated herein, Wilson respectfully requests that this Honorable Court grant his Motion for Summary Judgment, and enter judgment declaring him to be eligible for disability retirement pension benefits from the Plan, and awarding him attorneys' fees and costs.

Respectfully submitted,

JUBELIRER, PASS & INTRIERI, P.C.

BY:_____/s/ Jason Mettley_____
    Robert A. Eberle, Pa. I.D. #47359
    Jason Mettley, Pa. I.D. #81966
    219 Fort Pitt Boulevard
    Pittsburgh, PA 15222
    (412) 281-3850
    (412) 281-1985 (fax)
    rae@jpilaw.com
    jm@jpilaw.com