IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES D. WILSON, | ) | Docket No. 05-122E |
| | ) | (Judge Maurice B. Cohill, Jr.) |
| Plaintiff | ) | |
| | ) | ELECTRONICALLY FILED PLEADING |
| vs. | ) | |
| | ) | |
| MOTION CONTROL INDUSTRIES, | ) | MEMORANDUM IN SUPPORT OF |
| DIVISION OF CARLISLE | ) | DEFENDANTS' MOTION FOR SUMMARY |
| CORPORATION, RETIREMENT PLAN | ) | JUDGMENT |
| FOR BARGAINING UNIT EMPLOYEES | ) | |
| OF MOTION CONTROL INDUSTRIES, | ) | Filed on behalf of:  Defendants |
| DIVISION OF CARLISLE | ) | |
| CORPORATION, | ) | Counsel of record for this party: |
| | ) | Richard A. Lanzillo, Esq. |
| Defendants | ) | Knox McLaughlin Gornall |
| | ) | & Sennett, P.C. |
| | ) | 120 West 10th Street |
| | ) | Erie, PA 16501 |
| | ) | Telephone (814) 459-2800 |
| | ) | Facsimile (814) 453-4530 |
| | ) | Email rlanzillo@kmgslaw.com |
| | ) | PA53811 |
| | ) | |

**CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

## I.     BACKGROUND

1.     Plaintiff, Charles D. Wilson ("Wilson"), commenced this action to recover

disability retirement benefits under the Retirement Plan for Bargaining Unit Employees of

Motion Control Industries ("the Plan") based upon an injury he allegedly sustained after he lost

his job at Motion Control due to the closure of its Ridgway, Pennsylvania plant.  Wilson is the

seventh former employee of Motion Control Industries to file suit asserting such a claim.[1]

---

[1]     The other former employees of Motion Control who have filed similar actions before this Court are
Glenn H. Olay (docket no. 04-266), Henry M. Hearne (docket no. 04-276), Paul L. Plyler (docket no.
04-277), William F. Lunder (docket no. 04-278), Lynn A. Rhodes (docket no. 04-279), and Terry K.
Rockwell (docket no. 04-280).

-2-

2. Under the Plan, Wilson is entitled to disability retirement benefits only if his employment with Motion Control terminated "*because of*" his alleged disability. Based upon Wilson's deposition testimony and the undisputed facts of record, defendants have moved for summary judgment asserting that Wilson's claim is both substantively and procedurally infirm.

3. In his deposition, Wilson admitted that he sustained the injury upon which he bases his claim more than a year after the Ridgway plant closed and ***while he was already working for a new unrelated employer.*** Under these facts, Wilson's position that his employment with Motion Control terminated "because of" his alleged disability is facially absurd. Wilson's employment at Motion Control terminated because the plant closed, and his alleged disability did not arise until several months after he had been working for a new employer.

4. In addition to its substantive defects, Wilson's claim also fails because he never submitted a claim for benefits to the Plan or otherwise invoked, let alone exhausted, his administrative remedies as required by clearly established law.

II.    **MATERIAL FACTS**

a.    **Wilson's former employment with Motion Control and the disabling injury allegedly sustained by him during his subsequent employment with Huntington Foam**

5. Motion Control employed Wilson at its manufacturing facility in Ridgway, Pennsylvania, from February 25, 1972 until January 11, 2002, when it closed the Ridgway facility and permanently laid off its employees. (Complaint ¶¶9, 12; Answer ¶¶3, 9, 12).

6.      Although Wilson's employment ceased on January 11, 2002, Motion Control continued his wages and benefits as well as those of the other eligible employees of the Ridgway facility through March 16, 2002.  (Complaint ¶12; Answer ¶12).

7.      Wilson was a participant in the employer-sponsored retirement plan known as the Retirement Plan for Bargaining Unit Employees of Motion Control Industries ("the Plan").

8.      Wilson's Complaint alleges that he suffered a disabling injury sometime after January 11, 2002, but does not specify the precise date of this alleged injury or disability. (Complaint ¶15).

9.      In his deposition, Wilson testified that he sustained this injury on January 14, 2003 – more than one year after Motion Control terminated his employment.  (Deposition of Charles D. Wilson ("Wilson Depo"), p. 11, Exhibit A to Defendants' Concise Statement of Material Facts).

10.      In fact, Wilson sustained this injury during the course of his employment with a new employer, Huntington Foam, which is an entity wholly unrelated to Motion Control. (Wilson Depo., p. 11).  Wilson began working for Huntington Foam in late 2002.  (Wilson Depo., p. 11).

11.      On January 14, 2003, while working at Huntington Foam's plant, Wilson fell from a 12-foot step ladder and allegedly injured his back.  Thereafter, Wilson applied for and received worker's compensation benefits through Huntington Foam's insurance carrier.  (Wilson Depo, pp. 11, 28).

12.    In his Complaint, Wilson further alleges that he applied for Social Security Disability Benefits after he sustained his injury, although his Complaint neglects to mention that he sustained his injury during the course of his employment at Huntington Foam rather than in connection with his employment at Motion Control.  (Complaint ¶¶15-16).

13.    On August 21, 2004, the Social Security Administration issued a Notice of Award advising Wilson that he was entitled to Social Security Disability Insurance Benefits based on his alleged disability.  (Wilson Deposition, pp. 12-13).

14.    The Social Security Administration determined the onset date of that disability to by May, 2003 – more than 14 months after Wilson's employment at Motion Control was terminated.  (Id.)

15.    Prior to commencing this action, Wilson did not submit a claim for Disability Retirement Benefits to the Plan.  (Wilson Depo., pp. 16-24).

16.    In his Complaint, Wilson alleges that, after the closure of the Ridgway facility, he attempted to obtain an application form for a Disability Retirement Pension, but was refused such a form.  (Complaint ¶17).

17.    Wilson testified that he attempted to obtain such a form from Motion Control's human resource department, but was unable to talk with the individual with whom the Union directed him to speak.  (Wilson Depo., pp.16-24).  Wilson claims that he stopped seeking this form when he was informed by the Union that there was no use in continuing to ask for one.  (Id.)  However, as evidenced by the submissions in various other related cases pending before this Court, several other former employees obtained and submitted claim forms to Motion Control.

-5-

**b.      The Plan Documents**

18.      The Plan is comprised of two documents.  Part I, or the "master plan document," is the "Carlisle Corporation Retirement Plan for Hourly Paid Employees," as amended and restated effective January 1, 1997 ("Part I" or the "Carlisle Plan Document").[2]  The "Part II Supplement," as amended and restated effective as of July 20, 2000 ("Part II" or the "Supplement"), supplements the Carlisle Plan Document with provisions specific to the Motion Control "Participating Group."  (<u>See</u> Part I, pp. 2-3, §1.3 and Part II, p.2, ¶(u), which describe the constituent parts of the Plan).  The Carlisle Plan Document and the Supplement are designated, respectively, as Exhibits B and Exhibit C.

19.      The Carlisle Plan Document governs various pension plans established by Carlisle Corporation and certain affiliates, including Motion Control.  (Part I, p.1, §1.1).  The Part II Supplement describes "the benefits for Members who are in the employment of [Motion Control] in the Participating Group on and after July 20, 2000 and who retire or whose Vesting Service terminates on or after July 20, 2000."  (Part II, p.5, §u).

---

[2]       Motion Control was operated as a division of Carlisle Corporation.

c.    **Eligibility for Disability Retirement Benefits**

20.    The Plan provides for four (4) types of retirement benefits: (1) Normal

Retirement Benefits (Part I, §4.1); (2) Early Retirement Benefits (Part I, §4.2); (3) Disability

Retirement Benefits (Part I, §4.3); and (4) Deferred Vested Retirement Benefits (Part I, §4.4).[3]

Basic eligibility requirements for Disability Retirement Benefits are described in §4.3(a) of the

Carlisle Plan Document.  This provision states:

> **Eligibility**.  If the employment of a Participant, but
> not an Inactive Participant, *terminates* (prior to
> retirement under section 4.1, 4.2 or 4.4) *because of
> a Disability* after he attains his Disability
> Retirement Age, he shall be eligible to receive a
> disability retirement benefit under the Plan in
> accordance with and subject to the provisions of the
> Plan.

(Part I, p.17, §4.3(a)(emphasis supplied)).

21.    The Plan defines the term "Disability" as "total and permanent disability,

which is a medically determinable physical or mental impairment of a Participant resulting from

a bodily injury, disease, or mental disorder which renders him incapable of engaging in any

substantial gainful activity and which can be expected to result in death or to last at least 12

months; provided, however, that the Participant must be eligible for and actually receiving

disability benefits under the Social Security Act for the period of time from his date of disability,

after the waiting period required under the Social Security Act, until his Normal Retirement

Age."  (Part I, p.5, §2.1(m)).

---

[3]    Normal Retirement benefits are generally available when the participant's Vesting Service terminates on or after the participant reaches age 65.  (Part II, p.3, ¶(j)(1)).  Early Retirement benefits are generally available to a participant who has five or more years of Vesting Service and attains age fifty (50).  (Part II, p.3, ¶(j)(2)).  Deferred Vested Retirement Benefits are generally available to a participant whose Vesting Services terminates after he attains his Vested Retirement Age and before he reaches age 65.  Part I, p.18, §4.4 (a)).

        **d.**      **Plan Provisions Describing the Discretion and Authority of the Benefits Committee**

        22.     The Plan vests discretion regarding interpretation of the Plan in a Committee known as the "Carlisle Corporation Pension and Insurance Committee," which is comprised of five members selected in accordance with procedures prescribed by the Plan.  (Part I, p.32, §§7.1-7.2).  The Plan specifically grants the Committee "the exclusive right and discretionary authority to control the management, operation, and administration of the Plan, as plan administrator and a named fiduciary…".  (Part I, p.32, §7.3).

        23.     The powers and duties of the Committee include "the *exclusive right, in its discretion*, to make *any finding of fact* necessary or appropriate for any purpose under the Plan, including but not limited to the *determination of the eligibility* for and the amount of any benefit payable under the Plan," and "in its discretion, *to interpret the terms and provisions of the Plan and to determine any and all questions arising under the Plan* or in connection with the administration thereof, including, without limitation, the right to remedy or resolve possible ambiguities, inconsistencies, or omissions, by general rule or particular decision."  (Part I, p.32, §7.3)(d), (e)(emphasis supplied)).

        24.     In the event of a denial of a claim for benefits, the Plan provides a right of administrative review by the Committee.  (Part I, p.37, §7.9(c)).  If a claimant files a written request for review of a denied claim, the Plan provides that the Committee shall review the claim within forth-five (45) days after the Committee's receipt of the request for review unless the Committee determines that special circumstances require an extension of time, in which case, this period may be extended for up to an additional forth-five (45) days.  (Part I, pp.37-38, §7.9(c)).

-8-

      25.     Wilson did not request administrative review of the denial of his claim prior to filing this action in the United States District Court for the Western District of Pennsylvania.

<div style="margin-left: 50%;">

Respectfully submitted,

KNOX McLAUGHLIN GORNALL & SENNETT, P.C.

</div>

DATE:  September 1, 2006                    By: /s/ Richard A. Lanzillo __

<div style="margin-left: 50%;">

Richard A. Lanzillo
PA53811
Neal R. Devlin
PA89223
120 West Tenth Street
Erie, PA  16501-1461
Telephone: (814) 459-2800
Fax: (814) 453-4530
Email:  rlanzill@kmgslaw.com

Attorneys for Defendants, Motion Control Industries, Division of Carlisle Corporation, Retirement Plan for Bargaining Unit Employees of Motion Control Industries, Division of Carlisle Corporation

</div>

# 688361