IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES D. WILSON, | ) Docket No. 05-122E |
| | ) (Judge Maurice B. Cohill, Jr.) |
| Plaintiff | ) |
| | ) ELECTRONICALLY FILED PLEADING |
| vs. | ) |
| | ) |
| MOTION CONTROL INDUSTRIES, | ) MEMORANDUM IN SUPPORT OF |
| DIVISION OF CARLISLE | ) DEFENDANTS' MOTION FOR SUMMARY |
| CORPORATION, RETIREMENT PLAN | ) JUDGMENT |
| FOR BARGAINING UNIT EMPLOYEES | ) |
| OF MOTION CONTROL INDUSTRIES, | ) Filed on behalf of:  Defendants |
| DIVISION OF CARLISLE | ) |
| CORPORATION, | ) Counsel of record for this party: |
| | ) Richard A. Lanzillo, Esq. |
| Defendants | ) Knox McLaughlin Gornall |
| | ) & Sennett, P.C. |
| | ) 120 West 10th Street |
| | ) Erie, PA 16501 |
| | ) Telephone (814) 459-2800 |
| | ) Facsimile (814) 453-4530 |
| | ) Email rlanzillo@kmgslaw.com |
| | ) PA53811 |
| | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

Plaintiff, Charles D. Wilson ("Wilson"), is the seventh former employee of Motion Control Industries to file suit asserting a claim for disability retirement benefits under the Retirement Plan for Bargaining Unit Employees of Motion Control Industries ("the Plan") based upon an injury he allegedly sustained after he lost his job at Motion Control due to the closure of its Ridgway, Pennsylvania plant.[1] Under the Plan, Wilson is entitled to disability retirement

---

[1] The other former employees of Motion Control who have filed similar actions before this Court are Glenn H. Olay (docket no. 04-266), Henry M. Hearne (docket no. 04-276), Paul L. Plyler (docket no. 04-277), Willaim F. Lunder (docket no. 04-278), Lynn A. Rhodes (docket no. 04-279), and Terry K. Rockwell (docket no. 04-280).

benefits only if his employment with Motion Control terminated "*because of*" his alleged disability.

Based upon Wilson's deposition testimony, his claim is both substantively and procedurally infirm. In his deposition, Wilson admitted that he sustained the injury upon which he bases his claim more than a year after the Ridgway plant closed and *while he was already working for a new unrelated employer.* Under these facts, Wilson's position that his employment with Motion Control terminated "because of" his alleged disability is facially absurd. Wilson's employment at Motion Control terminated because the plant closed, and his alleged disability did not arise until several months after he had been working for a new employer. Moreover, Wilson never submitted a claim for benefits to the Plan or otherwise invoked, let alone exhausted, his administrative remedies as required by clearly established law.

## II.     MATERIAL FACTS

### a. Wilson's former employment with Motion Control and the disabling injury allegedly sustained by him during his subsequent employment with Huntington Foam

Motion Control employed Wilson at its manufacturing facility in Ridgway, Pennsylvania, from February 25, 1972 until January 11, 2002, when it closed the Ridgway facility and permanently laid off its employees. (Complaint ¶¶9, 12; Answer ¶¶3, 9, 12). Although Wilson's employment ceased on January 11, 2002, Motion Control continued his wages and benefits as well as those of the other eligible employees of the Ridgway facility through March 16, 2002. (Complaint ¶12; Answer ¶12). Wilson was a participant in the employer-sponsored retirement plan known as the Retirement Plan for Bargaining Unit Employees of Motion Control Industries ("the Plan").

Wilson's Complaint alleges that he suffered a disabling injury sometime after January 11, 2002, but does not specify the precise date of this alleged injury or disability. (Complaint ¶15).  In his deposition, Wilson testified that he sustained this injury on January 14, 2003 – more than one year after Motion Control terminated his employment. (Deposition of Charles D. Wilson ("Wilson Depo"), p. 11, attached as Exhibit A to Defendants' Concise Statement of Material Facts).  In fact, Wilson sustained this injury during the course of his employment with a new employer, Huntington Foam, which is an entity wholly unrelated to Motion Control.  (Wilson Depo., p. 11).  Wilson began working for Huntington Foam in late 2002.  (Wilson Depo., p. 11).  On January 14, 2003, while working at Huntington Foam's plant, Wilson fell from a 12-foot step ladder and allegedly injured his back.  Thereafter, Wilson applied for and received worker's compensation benefits through Huntington Foam's insurance carrier. (Wilson Depo, pp. 11, 28).

In his Complaint, Wilson further alleges that he applied for Social Security Disability Benefits after he sustained his injury, although his Complaint neglects to mention that he sustained his injury during the course of his employment at Huntington Foam rather than in connection with his employment at Motion Control.  (Complaint ¶¶15-16).  On August 21, 2004, the Social Security Administration issued a Notice of Award advising Wilson that he was entitled to Social Security Disability Insurance Benefits based on his alleged disability.  (Wilson Deposition, pp. 12-13).  The Social Security Administration determined the onset date of that disability to by May, 2003 – more than 14 months after Wilson's employment at Motion Control was terminated.  (Id.)

Prior to commencing this action, Wilson did not submit a claim for Disability Retirement Benefits to the Plan.  (Wilson Depo., pp. 16-24).  In his Complaint, Wilson alleges

that, after the closure of the Ridgway facility, he attempted to obtain an application form for a Disability Retirement Pension, but was refused such a form. (Complaint ¶17). Wilson testified that he attempted to obtain such a form from Motion Control's human resource department, but was unable to talk with the individual with whom the Union directed him to speak. (Wilson Depo., pp.16-24). Wilson claims that he stopped seeking this form when he was informed by the Union that there was no use in continuing to ask for one. (Id.) However, as evidenced by the submissions in various other related cases pending before this Court, several other former employees obtained and submitted claim forms to Motion Control.

### b.     The Plan Documents

The Plan is comprised of two documents. Part I, or the "master plan document," is the "Carlisle Corporation Retirement Plan for Hourly Paid Employees," as amended and restated effective January 1, 1997 ("Part I" or the "Carlisle Plan Document").[2] The "Part II Supplement," as amended and restated effective as of July 20, 2000 ("Part II" or the "Supplement"), supplements the Carlisle Plan Document with provisions specific to the Motion Control "Participating Group."[3] (See Part I, pp. 2-3, §1.3 and Part II, p.2, ¶(u), which describe the constituent parts of the Plan).

The Carlisle Plan Document governs various pension plans established by Carlisle Corporation and certain affiliates, including Motion Control. (Part I, p.1, §1.1). The Part II Supplement describes "the benefits for Members who are in the employment of [Motion Control] in the Participating Group on and after July 20, 2000 and who retire or whose Vesting Service terminates on or after July 20, 2000." (Part II, p.5, §u).

---

[2]    Motion Control was operated as a division of Carlisle Corporation.

[3]    The Carlisle Plan Document and the Supplement are attached to Defendants' Concise Statement in Support of Motion for Summary Judgment, respectively, as Exhibits B and Exhibit C.

     **c.    Eligibility for Disability Retirement Benefits**

The Plan provides for four (4) types of retirement benefits: (1) Normal Retirement Benefits (Part I, §4.1); (2) Early Retirement Benefits (Part I, §4.2); (3) Disability Retirement Benefits (Part I, §4.3); and (4) Deferred Vested Retirement Benefits (Part I, §4.4).[4]  Basic eligibility requirements for Disability Retirement Benefits are described in §4.3(a) of the Carlisle Plan Document.  This provision states:

> **Eligibility**.  If the employment of a Participant, but not an Inactive Participant, *terminates* (prior to retirement under section 4.1, 4.2 or 4.4) *because of a Disability* after he attains his Disability Retirement Age, he shall be eligible to receive a disability retirement benefit under the Plan in accordance with and subject to the provisions of the Plan.

(Part I, p.17, §4.3(a)(emphasis supplied)).

The Plan defines the term "Disability" as "total and permanent disability, which is a medically determinable physical or mental impairment of a Participant resulting from a bodily injury, disease, or mental disorder which renders him incapable of engaging in any substantial gainful activity and which can be expected to result in death or to last at least 12 months; provided, however, that the Participant must be eligible for and actually receiving disability benefits under the Social Security Act for the period of time from his date of disability, after the waiting period required under the Social Security Act, until his Normal Retirement Age." (Part I, p.5, §2.1(m)).

---

[4]    Normal Retirement benefits are generally available when the participant's Vesting Service terminates on or after the participant reaches age 65.  (Part II, p.3, ¶(j)(1)).  Early Retirement benefits are generally available to a participant who has five or more years of Vesting Service and attains age fifty (50).  (Part II, p.3, ¶(j)(2)).  Deferred Vested Retirement Benefits are generally available to a participant whose Vesting Services terminates after he attains his Vested Retirement Age and before he reaches age 65.  Part I, p.18, §4.4 (a)).

      d.      **Plan Provisions Describing the Discretion and Authority of the Benefits Committee**

The Plan vests discretion regarding interpretation of the Plan in a Committee known as the "Carlisle Corporation Pension and Insurance Committee," which is comprised of five members selected in accordance with procedures prescribed by the Plan. (Part I, p.32, §§7.1-7.2). The Plan specifically grants the Committee "the exclusive right and discretionary authority to control the management, operation, and administration of the Plan, as plan administrator and a named fiduciary…". (Part I, p.32, §7.3). The powers and duties of the Committee include "the *exclusive right, in its discretion*, to make *any finding of fact* necessary or appropriate for any purpose under the Plan, including but not limited to the *determination of the eligibility* for and the amount of any benefit payable under the Plan," and "in its discretion, *to interpret the terms and provisions of the Plan and to determine any and all questions arising under the Plan* or in connection with the administration thereof, including, without limitation, the right to remedy or resolve possible ambiguities, inconsistencies, or omissions, by general rule or particular decision." (Part I, p.32, §7.3)(d), (e)(emphasis supplied)).

In the event of a denial of a claim for benefits, the Plan provides a right of administrative review by the Committee. (Part I, p.37, §7.9(c)). If a claimant files a written request for review of a denied claim, the Plan provides that the Committee shall review the claim within forth-five (45) days after the Committee's receipt of the request for review unless the Committee determines that special circumstances require an extension of time, in which case, this period may be extended for up to an additional forth-five (45) days. (Part I, pp.37-38, §7.9(c)).

### III.  DISCUSSION

####   a.  Wilson failed to exhaust his administrative remedies.

This action is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.  An ERISA beneficiary may bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan...."  29 U.S.C. § 1132(a)(1)(B).  However, "except in limited circumstances ... a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan."  Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 249 (3d Cir. 2002), quoting Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir.1990) See also Wolf v. National Shopmen Pension Fund, 728 F.2d 182, 185 (3d Cir. 1984)); Zipf v. Am. Tel. & Tel. Co., 799 F.2d 889, 892 (3d Cir. 1986); Sollon v. Ohio Casualty Ins. Co., 2005 WL 2768948 *24 (W.D. Pa. Oct. 25, 2005).  "[S]ound policy requires the application of the exhaustion doctrine in suits under [ERISA]."  Amato v. Bernard, 618 F.2d 559, 567 (9th Cir.1980).  Courts require exhaustion of administrative remedies "to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a non-adversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned."  Amato, 618 F.2d at 567.  Moreover, trustees of an ERISA plan "are granted broad fiduciary rights and responsibilities under ERISA ... and implementation of the exhaustion requirement will enhance their ability to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes."  Id.; see also Zipf, 799 F.2d at 892 ("When a plan participant claims that he or she has unjustly been denied benefits, it is appropriate to require participants first to address

their complaints to the fiduciaries to whom Congress, in Section 503, assigned the primary responsibility for evaluating claims for benefits.").

The rationale underlying the exhaustion requirement is particularly compelling in this case. Wilson's Complaint presents matters of Plan interpretation and issues of fact that are distinctly appropriate for administrative review. Yet, Wilson has not even attempted to present these matters to the Committee. The Plan specifically grants the Committee "the exclusive right and discretionary authority to control the management, operation, and administration of the Plan, as plan administrator and as named fiduciary…" (Part I, p.32, §7.3). The powers and duties of the Committee include "the exclusive right, in its discretion, to make any *finding of fact* necessary or appropriate for any purpose under the Plan, including but not limited to the *determination of the eligibility* for and the amount of any benefit payable under the Plan," and "in its discretion, *to interpret the terms and provisions of the Plan* and to determine any and all questions arising under the Plan or in connection with the administration thereof, including, without limitation, *the right to remedy or resolve possible ambiguities, inconsistencies, or omissions*, by general rule or particular decision." (Part I, p.32, §7.3)(d), (e)). Thus, the Plan grants to the Committee the broadest possible discretion regarding determinations of benefits and interpretation of the Plan.

Where, as here, the plan document grants discretion and authority to the plan administrator to interpret the plan and make factual determinations regarding benefit eligibility, the federal courts recognize and respect this discretion and authority by applying the arbitrary and capricious standard of review to such interpretations and determinations of fact. Luby v. Teamsters Health, Welfare & Pension Trust Funds, 944 F.2d 1176 (3d Cir. 1991). In the present case, Wilson seeks to circumvent the foregoing principles by having this Court take the first

crack at interpreting the various plan provisions implicated by his claim and by making findings of fact regarding his alleged disability and eligibility for benefits. This approach is precluded by ERISA and well-established Third Circuit precedent.

It is also clear that no exception to the exhaustion requirement applies to Wilson's claim. In Zipf, the Third Circuit distinguished between claims to enforce the terms of a benefit plan and claims to assert rights established by the ERISA statute. 799 F.2d at 891. Exhaustion of Plan remedies is required in the former, but not the latter, category of cases. Id. Since Zipf, a vast majority of cases waiving the exhaustion requirement have fallen in two categories: (1) discrimination claims under section 510 of ERISA, or (2) failure to provide plaintiffs with Summary Plan Descriptions, as required by ERISA. Harrow, 279 F.3d at 253. More recently, the Third Circuit has also recognized the possibility of waiving exhaustion in cases where statutory rights stem from the fiduciary duties set forth in section 404 of ERISA, 29 U.S.C. § 1104(a). See Harrow, 279 F.3d at 253-54. In the present case, Wilson asserts only a routine claim for benefits under the Plan. Such claims fall squarely within the scope of the exhaustion requirement, and the federal courts have uniformly held that exhaustion applies to such claims.

Defendants believe that Wilson may argue that the exhaustion requirement should be excused in this case based upon allegations of "futility." The plaintiffs made this argument in a related case pending before the Honorable Sean J. McLaughlin, and the Court squarely rejected it. That case was also initiated by former employees of Motion Control's Ridgway facility against the same defendants named by Wilson in this case. In Larry Donachy, et al. vs. Motion Control Industries, et al., Civil Action No. 04-245, 2005 WL 3488714 (W.D.Pa., December 21, 2005), two former Motion Control employees filed an ERISA action on their own behalf and on behalf of other employees who were permanently laid off from the Ridgway facility, asserting

entitlement to retirement benefits a certain level under the Plan. As in this case, the plaintiffs in the <u>Donachy</u> case did not submit their claim or proposed interpretation of the Plan to the Committee before filing suit. After reviewing the relevant factors concerning the futility exception to ERISA's exhaustion requirement, Judge McLaughlin granted defendants' Motion for Summary Judgment based upon the plaintiffs' failure to exhaust their administrative remedies under the Plan. A copy of <u>Donachy vs. Motion Control Industries</u>, Civil Action No. 04-245, 2005 WL 3488714 (W.D.Pa., December 21, 2005) is attached as Brief Exhibit 1 to this Memorandum.

<u>Donachy</u>'s holding is not only on-point with respect to the facts of this case, but it is also consistent with applicable Third Circuit precedent. Futility, in the context of ERISA exhaustion, is a relatively well-developed concept. The threshold to support a claim of futility is extremely high under Third Circuit precedent. The plaintiff must "'show that it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision.'" <u>Harrow v. Prudential Ins. Co. of Am.</u>, 279 F.3d 244, 249 (3d Cir. 2002), <u>quoting</u> <u>Fallick v. Nationwide Mut. Ins. Co.</u>, 162 F.3d 410, 419 (6th Cir. 1998). "Given the policies underlying the exhaustion requirement, including reducing frivolous lawsuits and promoting efficient management of ERISA plans, courts have been reluctant to grant the [futility] exception." <u>Menendez v. United Food & Commercial Workers Local 450T, AFL-CIO</u>, No. 05-CV-1165, 2005 WL 1925787, *2 (D. N.J., August 11, 2005). Therefore, a plaintiff claiming "waiver of the exhaustion requirement" must "provide a clear and positive showing of futility." <u>Harrow</u>, 279 F.3d at 249. Wilson has presented not facts to support this high burden and is in the same position as the plaintiff in <u>Donachy</u>.

No basis exists to justify a result in this case different from the holding in Donachy. This case requires interpretation of the same Plan and the same administrative process that the Court addressed in the Donachy case. This case also involves a claimant from the same group of employees whose employment ended with the closure of the Ridgway facility, the same defendants, and the same counsel as in the Donachy case. Like the plaintiffs in Donachy, Wilson failed to exhaust his administrative remedies and, like the claim of the plaintiffs in Donachy, Wilson's claim also must be dismissed on this basis.

>    **b.    Wilson's claim for disability retirement benefits also fails as a matter of substance because it is contrary to the clear and unambiguous terms of the Plan.**
>
>    >    **i.    The Plan must be interpreted according to its clear and unambiguous terms.**

ERISA is a comprehensive statute enacted "to promote the interests of employees and their beneficiaries in employee benefit plans," Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983), and "to protect contractually defined benefits." Massachusetts Mutual Life Ins. v. Russell, 473 U.S. 134, 148, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985); see also 29 U.S.C. §1001. ERISA's framework ensures that employee benefit plans are governed by written documents, which are the statutorily established means of informing participants and beneficiaries of the terms of their plan and its benefits. See Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155 (3d Cir.1990); Confer v. Custom Engineering Co., 952 F.2d 41 (3d Cir.1991); Hamilton v. Air Jamaica, Ltd., 945 F.2d 74 (3d Cir.1991), cert. denied, 503 U.S. 938, 112 S.Ct. 1479, 117 L.Ed.2d 622 (1992); 29 U.S.C. § 1022(a)(1).

Where the plan document is clear and unambiguous, it is to be interpreted according to its plain meaning. Walker v. Wal-Mart, Inc., 159 F.3d 938, 940-941 (5th Cir. 1998).

Moreover, plan provisions are not to be regarded as ambiguous simply because their language is technical in nature. Id.

In the present case, Wilson contends that he is entitled to Disability Retirement benefits under the Plan. As discussed above, the Court should not reach this issue because Wilson failed to exhaust his administrative remedies, and the Plan vests in the Committee exclusive discretion and authority to decide claims and eligibility for benefits and to interpret the Plan. Nevertheless, even if the Court were to reach the merits of this dispute, Wilson's claim and his proposed interpretation of the Plan must be rejected because they are directly contrary to the terms of the Plan.

> **ii.     Under the clear and unambiguous terms of the Plan, Wilson is not entitled to receive Disability Retirement Benefits because his employment did not terminate because of his disability.**

Section 4.2(a) of the Carlisle Plan Document makes clear that "Disability Retirement" benefits are available only where the Participant's "employment … terminates … because of a Disability" This clause is clear and unambiguous. The termination of the Participant's employment must have been the direct result of the Participant's disability. Wilson's employment terminated because of the closure of the facility and the permanent laying off of Wilson and his fellow employees. The plant closed on January 11, 2002, although Motion Control continued to pay Wilson and his fellow employees until March 16, 2002. As of the closure of the Ridgway facility, Wilson ceased being an active employee of Motion Control. (Complaint ¶12; Answer ¶12).

Striking evidence of the fact that Wilson's employment did not, and could not have, terminated as a result of a disability is Wilson's admission that he sustained his allegedly disabling injury while working for a different employer, over one year after his employment with

Motion Control was terminated. In fact, Wilson received worker's compensation benefits from this new company's insurance carrier as a result of this injury.

Based upon Wilson's own allegations, and his admission that he was injured while working for an employer other than Motion Control, he has no valid claim to a Disability Retirement Pension under the Plan

      **c.**     **Reservation of Phase II Issues and Discovery**

On June 14, 2006, defendants issued interrogatories and a request for production of documents to Wilson. Defendants' written discovery requests information and documents relevant to various issues in this case, including Wilson's allegations that Motion Control refused to provide him with a Benefits Application, the dates upon which he allegedly requested a Benefits Application, and the nature and date of onset of his alleged disability. Defendants' interrogatories and request for production of documents remain outstanding based upon the parties' Court approved stipulation bifurcating factual issues from the threshold legal issues addressed in this Motion for Summary Judgment.

On August 1, 2006, counsel for Motion Control conducted a limited deposition of Wilson related only to those matters at issue in phase I discovery. Motion Control expressly reserved its right to re-depose Wilson on matters related to phase II discovery if this case proceeds to that phase. For purposes of the parties' initial cross-motions for summary judgment only, defendants assume the accuracy of the dates and certain other factual allegations asserted in Wilson's Complaint. However, should this case survive phase I summary judgment under the current scheduling order, defendants reserve the right to challenge the factual allegations of Wilson's Complaint in phase 2 of the case.

## IV. CONCLUSION

For the reasons discussed above, defendants respectfully request that the Court enter summary judgment in their favor and dismiss Wilson's Complaint. No genuine issue of material fact remains for trial and defendants are entitled to judgment as a matter of law.

By Court approved stipulation, the parties agreed to bifurcate certain legal issues in this case from more factually intensive issues. Under the parties' stipulation, the first phase of the litigation limited discovery and dispositive motions to threshold legal issues such as exhaustion of remedies and legal interpretation of key provisions of the Plan, such as §4.2. If the Court rules in favor of defendants on either of these issues, there would be no need to proceed to the second phase of the litigation. If the Court rules in favor of Wilson on both of these threshold issues, the case would proceed regarding factual issues such as the nature, timing and extent of Wilson's disability and whether the vesting and other prerequisites to benefits are satisfied in this case. Defendants respectfully submit that, based on the undisputed facts and controlling law, there is no need for the case to proceed to a second phase.

Respectfully submitted,

KNOX McLAUGHLIN GORNALL & SENNETT, P.C.

DATE: September 1, 2006

By: /s/ Richard A. Lanzillo
Richard A. Lanzillo
PA53811
Neal R. Devlin
PA89223
120 West Tenth Street
Erie, PA 16501-1461
Telephone: (814) 459-2800
Fax: (814) 453-4530
Email: rlanzill@kmgslaw.com

Attorneys for Defendants, Motion Control Industries, Division of Carlisle Corporation, Retirement Plan for Bargaining Unit Employees of Motion Control Industries, Division of Carlisle Corporation

# 685991