## Article 2. Definitions

### 2.1 Definitions

Whenever used in the Plan, the words and phrases defined in this Article 2 shall have the following meaning unless a different meaning is clearly required by the context of the Plan. When the defined meaning is intended the term is capitalized.

(a) "**Act**" means the Employee Retirement Income Security Act of 1974, as now in effect or hereafter amended.

(b) "**Actuarial Equivalent**" means equality in the value of aggregate amounts expected to be received under different forms of payment, other than a lump sum amount, or at times other than the Normal Retirement Age based on the following assumptions except as otherwise provided in the Plan:

   (1) Mortality. The projections to 1975, by Projection Scale D, of the Male 1971 Group Annuity Mortality Table (six years set back for all Members and no set back for contingent annuitants); and

   (2) Interest. 5.5 percent.

(c) "**Actuary**" means the actuary for the Plan who is appointed or selected by the Committee.

(d) "**Affiliate**" means—

   (1) the Company and any corporation, i.e., either a subsidiary corporation or an affiliated or associated corporation of the Company, which together with the Company is a member of a "controlled group" of corporations (as defined in Code section 414(b));

   (2) any organization (whether or not incorporated) which together with the Company is under "common control" (as defined in Code section 414(c));

   (3) any organization (whether or not incorporated) which together with the Company is an "affiliated service group" (as defined in Code section 414(m)); or

   (4) any other entity required to be aggregated with the Company pursuant to regulations under Code section 414(o).

Exhibit 2

(e) "Beneficiary" means the person or persons designated by the Member in writing on a form filed with the Committee to receive any benefits (other than a continuing monthly retirement benefit under a Contingent Annuitant Option) upon the death of the Member. Except as otherwise provided in sections 4.6 and 4.7 hereof, the Member may designate primary and contingent beneficiaries and may change such designation at any time and from time to time during his lifetime without the consent of the beneficiary or beneficiaries so designated, and no such beneficiary or beneficiaries shall have any vested rights prior to the death of the Member. If no beneficiary is designated at the death of the Member, or if no such beneficiary survives the Member, the Beneficiary shall be—

(1) the Member's spouse, if living;

(2) the Member's descendants, if any, in equal shares;

(3) the Member's parents, if living, in equal shares;

(4) the Member's heirs at law in the proportion determined by the laws of intestate succession for the Member's state of residence at the time of the Member's death; or

(5) otherwise, to the estate of the Member.

(f) "Benefit Commencement Date" means the date as of which the first payment of a Member's normal, early, disability (if any), or deferred vested retirement benefit is due under the Plan.

(g) "Board of Directors" or "Board" means the Board of Directors of Carlisle Corporation.

(h) "Code" means the Internal Revenue Code of 1986, as amended, or as it may be amended from time to time, or the corresponding provisions of any subsequent law.

(i) "Committee" means the Carlisle Corporation Pension and Insurance Committee, as described in Article 7.

(j) "Company" means Carlisle Corporation and its corporate successors.

(k) "Contingent Annuitant" means the person entitled to receive a monthly retirement benefit upon the death of a Member who has elected a Contingent Annuitant option.

(l) "Coverage Date" means the date or dates as of which each separate plan shall be effective, as set forth in the Supplement hereto.

Exhibit 2

(m)     "Disability" means total and permanent disability, which is a medically determinable physical or mental impairment of a Participant resulting from a bodily injury, disease, or mental disorder which renders him incapable of engaging in any substantial gainful activity and which can be expected to result in death or to last at least 12 months; provided, however, that the Participant must be eligible for and actually receiving disability benefits under the Social Security Act for the period of time from his date of disability, after the waiting period required under the Social Security Act, until his Normal Retirement Age.

The total and permanent disability of any Participant shall be determined by the Committee, upon the advice of a qualified physician, in accordance with uniform principles consistently applied to all Participants in similar circumstances. At reasonable times prior to the Participant's Normal Retirement Age, the Committee may require the Participant to furnish evidence satisfactory to the Committee of the continuance of such Disability. Should any such Participant refuse or fail to submit such evidence, he shall lose all rights to any disability retirement benefits until he shall actually submit such evidence, and should he fail for one year to submit such evidence, all his rights to any disability retirement benefits shall permanently cease. If it appears from such evidence that the Disability of a Participant who has not reached his Normal Retirement Age has ceased, all his rights to any disability retirement benefits shall cease.

Or, "Disability" shall have such other or further meaning as specified in a Supplement applicable to a Participating Group.

(n)     "Employee" means any person employed by the Company or an Affiliate, but shall not include any person who is a "leased employee" as described in Code section 414(n)(2).

(o)     "Employer" means the Company and any Affiliate which elects to become a party to the Plan with the approval of the Company by adopting the Plan for the benefit of its eligible Hourly Employees in one or more Participating Groups in the manner prescribed in Article 10, or any one or more or all of such adopting Affiliates, as the context indicates. The Company may act as agent for an Affiliate that becomes an Employer hereunder for all purposes of the Plan. As of January 1, 1997, the Employers under the Plan are Carlisle Corporation (E.I.N. 23-0457510), Continental Carlisle Incorporated (E.I.N. 31-1075965), and Motion Control Industries, Inc. (E.I.N. 25-1539808).

(p)     "Hourly Employee" means any hourly paid person in the employ of the Company in its plant or other facility at the location or locations specified in the Supplement, except that it shall not include—

Exhibit 2